UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

MICHAEL A. HUTCHINSON,

        Plaintiff,

v.

COMMISSIONER OF
SOCIAL SECURITY,

        Defendant.
                                          /

No. 12-13213

District Judge Nancy G. Edmunds

Magistrate Judge R. Steven Whalen

## REPORT AND RECOMMENDATION

Plaintiff brings this action under 42 U.S.C. §405(g), challenging a final decision of Defendant Commissioner denying his application for Disability Insurance Benefits ("DIB") under Title II of the Social Security Act. Parties have filed cross motions for summary judgment which have been referred for a Report and Recommendation pursuant to 28 U.S.C. §636(b)(1)(B). For the reasons set forth below, I recommend that Defendant's Motion for Summary Judgment be GRANTED [Docket #9] and Plaintiff's Motion for Summary Judgment DENIED [Docket #8].

## I. PROCEDURAL HISTORY

Plaintiff applied for DIB on May 12, 2010, alleging disability as of November 23, 1999 (Tr. 117). Upon initial denial of the claim, Plaintiff requested an administrative hearing, held on June 17, 2011 in Mount Pleasant, Michigan before Administrative Law Judge ("ALJ") JoErin O'Leary (Tr. 37). Plaintiff, represented by attorney Mikel Lupisella, testified, (Tr.40-55), as did vocational expert ("VE") Paul Delmar (Tr. 55-59). On July 8, 2011, ALJ O'Leary found Plaintiff not disabled (Tr. 21).

-1-

On June 8, 2012, the Appeals Council declined to review the administrative decision (Tr. 1-3). Plaintiff filed suit in this Court on July 20, 2012.

## II.  BACKGROUND FACTS

Plaintiff, born April 26, 1957, was 48 at the time his entitlement to DIB expired on December 31, 2005 (Tr.21, 41, 117). He finished 11th grade and worked previously as a construction foreman, laborer, and window builder (Tr. 158-159). He alleges disability as a result of a left knee injury (Tr. 157).

### A.  Plaintiff's Testimony

Plaintiff offered the following testimony:

In December, 1999, he injured his knee in a workplace accident (Tr. 42). He required the use of a cane, noting that he used a cane given to him by his grandmother (Tr. 46). Between the time of the accident and the 2005 expiration of benefits, his weight increased from 200 to 260 pounds (Tr. 47). He currently weighed approximately 300 pounds (Tr. 47). Before the expiration of benefits, he underwent at least two left knee surgeries (Tr. 47). Post-surgical physical therapy created leg swelling (Tr. 48).  Neither attempts to drain the knee nor injections relieved the swelling (Tr. 49). A prescribed knee brace stabilized his knee (Tr. 49). During the insured period, Plaintiff coped with knee pain by taking Lorcet (Tr. 48).

Plaintiff opined that the knee condition precluded desk work due to his inability to sit for extended periods due to left knee became numbness (Tr. 51). Knee pain created sleep disturbances (Tr. 51). He was able to walk up to half a mile, provided he was able to stop intermittently to sit (Tr. 51-52). He climbed stairs with difficulty (Tr. 52). He currently lived with his handicapped mother (Tr. 53).

## B. Medical Records[1]

In November, 1999, imaging studies of the left knee showed osseous density possibly representing a loose body (Tr. 221). Plaintiff reported sharp pain, swelling, and bruising (Tr. 261). A January, 2000 MRI of the left knee showed a partial tear of the posterior horn of the medial meniscus (Tr. 219). Additional imaging studies of the left knee performed the same month were negative for foreign bodies (Tr. 220). In May, 2000, Plaintiff underwent an arthroscopic procedure for the meniscal tear of the left knee (Tr. 217). In August, 2000, Plaintiff reported posterior knee pain and swelling during the day (Tr. 260). In December, 2000, Plaintiff underwent a second arthroscopic procedure of the left knee without complications (Tr. 216). In September, 2001, Caroline Scott, M.D. noted that Plaintiff did not experience knee swelling (Tr. 259). A February, 2002 MRI of the left knee showed a degenerative tear but no abnormalities of the ligaments or tendons (Tr. 254). May, 2004 treating notes state that Plaintiff was concerned about intermittent dizziness, noting its effects on his plans to go fishing (Tr. 255).

An undated "return to work" certificate by Dr. Scott placed limitations on Plaintiff's ability to lift, twist, or turn (Tr. 253). February, 2005 treating notes state that Plaintiff experienced knee pain and heel problems as a result of deer hunting ***** (Tr. 250). April, 2005 treating notes by Phoenix Family Physicians state that Plaintiff was unable to "do anything physical" (Tr. 250). March, 2007 treating notes by Dr. Scott state that Plaintiff required the use of cane and was favoring the right knee (Tr. 240, 247). Plaintiff reported that he injured his right knee while fishing the previous fall (Tr. 239). Dr. Scott's treating notes from the following month state that the previous weekend, Plaintiff injured his knee

---

[1]Medical evidence post-dating the December 31, 2005 expiration of benefits is included for background purposes only.

in a second fishing accident (Tr. 237). Imaging studies of the right knee showed a complex tear of the posterior horn and medial meniscus (Tr. 252). In June, 2007, Plaintiff reported that he had not been to physical therapy because "he still ha[d] too much going on at home," but swam and walked his dog regularly (Tr. 235). August, 2007 records state that Plaintiff had "been doing a lot of swimming" (Tr. 234). The following month, Plaintiff denied knee swelling (Tr. 233).

In February, 2010, Caroline Scott, M.D. completed a medical source statement, finding that due to joint swelling, pain, obesity, and medication side effects, Plaintiff experienced depression and significant deficiencies in concentration (Tr. 225-226). She opined that Plaintiff was unable to stand for more than one hour at a time, adding that he required 30-minute walking breaks before returning to a sitting position (Tr. 227). She also found that Plaintiff's knee problems would oblige him to elevate his legs to chest level or higher and required periodic position changes allowing him to recline when needed (Tr. 227). Dr. Scott found that Plaintiff was unable sit for more than a total of four hours in an eight-hour period or stand or walk for more than two (Tr. 228). She also found that he needed to recline for five hours each workday (Tr. 228). She found that he was capable of lifting up to 10 pounds occasionally and five frequently (Tr. 229). She precluded Plaintiff from all stooping and limited him to the occasional use of the right hand (Tr. 229). She found he required the use of a cane for all walking (Tr. 230). Dr. Scott concluded her assessment by stating that Plaintiff had experienced the above-stated limitations since 1999 (Tr. 231).

### C. Vocational Testimony

VE Delmar characterized Plaintiff's former work as a stone mason (as described) as

very heavy and semiskilled[2] (Tr. 57). The ALJ then posed the following question to the VE, taking into account Plaintiff's age, education, and work experience:

> [A] younger individual . . . who would be limited to sedentary exertional work. And in addition, this individual would be unable to operate foot controls. They would be unable to climb ladders, ropes, and scaffolds. They'd only occasionally be able to climb stairs or ramps. They could never kneel, they could never crawl. And they would further be limited to jobs that could be performed while using a hand held assistive device for prolonged ambulation. Would, clearly such an individual . . . not be able to perform the past work that you identified? (Tr. 58).

The VE responded that given the hypothetical limitations, the individual would be unable to perform his past relevant work but could perform the unskilled, sedentary work of a final assembler (4,500 positions in the regional economy); small parts assembler (3,000); and inspector (3,500) (Tr. 58). The VE testified that either the need to miss more than two days of work each month or, elevate the legs above waist level while performing work duties would preclude all substantial gainful employment (Tr. 59).

### D. The ALJ's Decision

Citing the medical records, ALJ O'Leary found that on or before the date last insured of December 31, 2005, Plaintiff experienced the severe impairment of "bilateral knee injuries," but determined that the condition did not meet or equal a listed impairment found in 20 C.F.R. Part 404, Subpart P, Appendix 1 (Tr. 15). The ALJ determined that Plaintiff had the Residual Functional Capacity ("RFC") for sedentary work with the following additional

---

[2] 20 C.F.R. § 404.1567(a-d) defines *sedentary* work as "lifting no more than 10 pounds at a time and occasionally lifting or carrying articles like docket files, ledgers, and small tools; *light* work as "lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds;" *medium* work as "lifting no more than 50 pounds at a time with frequent lifting or carrying of objects weighing up to 25 pounds;" and that exertionally *heavy* work "involves lifting no more than 100 pounds at a time with frequent lifting or carrying of objects weighing up to 50 pounds. *Very Heavy* work requires "lifting objects weighing more than 100 pounds at a time with frequent lifting or carrying of objects weighing 50 pounds or more. § 404.1567(e).

restrictions:

> [C]laimant is unable to operate foot controls, climb ladders, ropes or scaffolds. he can occasionally climb stairs and ramps, but never kneel or crawl. The claimant is limited to jobs while using a hand held assistive [device] for prolonged ambulation (Tr. 16).

Citing the VE's testimony, the ALJ determined that while Plaintiff was unable to perform his past relevant work, he could work as a final assembler, small part assembler, and inspector (Tr. 21).

The ALJ discounted Plaintiff's allegations of disability, citing evidence showing that he was able to prepare meals, perform self care tasks, shop, manage his finances, and swim (Tr. 18). The ALJ noted that while Plaintiff was obese, he did not experienced physical limitations as a result of the condition (Tr. 19).

### III.   STANDARD OF REVIEW

The district court reviews the final decision of the Commissioner to determine whether it is supported by substantial evidence. 42 U.S.C. §405(g); *Sherrill v. Secretary of Health and Human Services,* 757 F.2d 803, 804 (6th Cir. 1985). Substantial evidence is more than a scintilla but less that a preponderance. It is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales,* 402 U.S. 389, 401, 91 S.Ct. 1420, 28 L.Ed.2d 842 (1971) (*quoting Consolidated Edison Co. v. NLRB,* 305 U.S. 197, 229, S. Ct. 206, 83 L.Ed.126 (1938)). The standard of review is deferential and "presupposes that there is a 'zone of choice' within which decision makers can go either way, without interference from the courts." *Mullen v. Bowen,* 800 F.2d 535, 545 (6th Cir. 1986)(en banc). In determining whether the evidence is substantial, the court must "take into account whatever in the record fairly detracts from its weight." *Wages v. Secretary of Health & Human Services*, 755 F.2d 495, 497 (6th Cir. 1985). The court must examine the administrative record as a whole, and may look to any evidence in the record, regardless of

whether it has been cited by the ALJ. *Walker v. Secretary of Health and Human Services*, 884 F.2d 241, 245 (6th Cir. 1989).

## IV.    FRAMEWORK FOR DISABILITY DETERMINATIONS

Disability is defined in the Social Security Act as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. §423(d)(1)(A). In evaluating whether a claimant is disabled, the Commissioner is to consider, in sequence, whether the claimant: 1) worked during the alleged period of disability; 2) has a severe impairment; 3) has an impairment that meets or equals the requirements of an impairment listed in the regulations; 4) can return to past relevant work; and 5) if not, whether he or she can perform other work in the national economy. 20 C.F.R. §416.920(a). The Plaintiff has the burden of proof at steps one through four, but the burden shifts to the Commissioner at step five to demonstrate that, "notwithstanding the claimant's impairment, he retains the residual functional capacity to perform specific jobs existing in the national economy." *Richardson v. Secretary of Health & Human Services,* 735 F.2d 962, 964 (6th Cir.1984).

## V.  ANALYSIS

Plaintiff argues that his alleged need to sit with his legs elevated to chest level for "'two to three'" hours of the workday was improperly discounted by the ALJ. *Plaintiff's Brief* at 7, *Docket #8* (citing Tr. 58). He argues that the omission of this limitation from the

hypothetical question invalidates the VE's job testimony from which the ALJ made his Step Five finding. *Id.* He also contends that the ALJ erred by failing to explain her rationale for rejecting his claims of physical limitation. *Id.* at 8-10 (citing *Felisky v. Bowen,* 35 F.3d 1027 (6th Cir. 1994)).

The question of whether the ALJ erred by omitting Plaintiff's professed limitations from the hypothetical question depends on the credibility determination. *See Stanley v. Secretary of Health and Human Services,* 39 F.3d 115, 118-119 (6th Cir.1994)(ALJ not obliged to include discredited allegations of limitation in hypothetical to VE). As such, the Court addresses Plaintiff second argument first.

The credibility determination, guided by SSR 96-7p, describes a two-step process for evaluating symptoms. "First, the adjudicator must consider whether there is an underlying medically determinable physical or mental impairment. . .that can be shown by medically acceptable clinical and laboratory diagnostic techniques." 1996 WL 374186 at *2. The second prong of SSR 96-7p directs that whenever a claimant's allegations regarding "the intensity, persistence, or functionally limiting effects of pain or other symptoms are not substantiated by objective medical evidence," the testimony must be evaluated "based on a consideration of the entire case record."*Id.* [3]

---

[3] In addition to an analysis of the medical evidence, C.F.R. 404.1529(c)(3) lists the factors to be considered in making a credibility determination:

> (i) Your daily activities; (ii) The location, duration, frequency, and intensity of your pain or other symptoms; (iii) Precipitating and aggravating factors; (iv) The type, dosage, effectiveness, and side effects of any medication you take or have taken to alleviate your pain or other symptoms; (v) treatment, other than medication, you receive or have received for relief of your pain or other symptoms; (vi) Any measures you use or have used to relieve your pain or other symptoms ... and (vii) Other factors concerning your functional limitations and restrictions due to pain or other symptoms."

Plaintiff does not contest the Step Two finding that bilateral knee injuries were a "severe" impairment or argue that the ALJ overlooked other conditions or diseases causing workplace limitations (Tr. 15). Instead, relying on the second prong of SSR 96-7p, he appears to argue that the ALJ did not address his allegations of limitations or provide a satisfactory explanation for discounting them. *Plaintiff's Brief* at 9-10.

This argument is without merit. The ALJ began her credibility analysis by restating Plaintiff's allegations of limitation including sleep deprivation, the need to elevate his legs, "constant pain and weakness," the need for a cane, and limitations in lifting, squatting, bending, standing, walking, sitting, kneeling, climbing stairs, and manipulative functions (Tr. 16-17). Next, the ALJ provided a thorough summary of Plaintiff's workplace accident and subsequent treatment, including records created after the December 31, 2005 expiration of eligibility for DIB. She acknowledged the 2005 treating records stating that Plaintiff needed to keep his leg elevated for up to 150 minutes at a time (Tr. 17, 250).

However, in support of his credibility determination, the ALJ noted "relatively few treatment records" predating the expiration date (Tr. 18). While at one appointment, Plaintiff stated that he needed to elevate his leg for over two hours at a time, the record does not support his claim that he was required to do so for an extended period. The ALJ also noted that the treating records from the insured period showed that Plaintiff continued to fish and hunt (Tr. 18, 250, 255). The ALJ also reasonably found that Plaintiff's ability shop, take care of his disabled mother, manage his finances, take long walks with his dog, and opt out of physical therapy in favor of swimming in a nearby lake undermined his claims that he was unable to perform a limited range of sedentary work (Tr. 18). With the exception of the arthroscopic procedures, she observed that Plaintiff had received mostly conservative treatment (Tr. 18). She noted that he did not require physical therapy or prescription pain

relievers (Tr. 19).

Plaintiff also faults the ALJ's observation he was able to sit comfortably during his administrative hearing testimony. *Plaintiff's Brief* at 10 (citing Tr. 18). However, the ALJ did not give dispositive weight to this observation and in fact acknowledged that the observation could not "be considered a conclusive indicator of [Plaintiff's] overall level of pain on a day-to-day basis . . ." (Tr. 18). In giving her observations "some weight" the ALJ was well within the parameters of her discretion. *See Walters v. Commissioner of Social Sec.,* 127 F.3d 525, 531 (6th Cir. 1997)(because "an ALJ is charged with the duty of observing a witness's demeanor and credibility," the "findings based on the credibility of the applicant are to be accorded great weight"). These weight accorded her firsthand observations, coupled with record evidence supporting the a non-disability finding, generously support the credibility determination. Moreover, the well-supported credibility determination defeats Plaintiff's argument that the ALJ erred by omitting some of his alleged limitations from the hypothetical question. Having explained her reasons for discounting the unsupported allegations of limitation, she was not required to include them in the hypothetical question. *See Stanley, supra,* 39 F.3d at 118-119. Because I find no error in the ALJ's credibility determination, remand on this basis is not warranted. In addition, my own review of the transcript has not revealed any other grounds for remand.

In closing, it must be noted that the recommendation to uphold the Commissioner's decision on this application is not intended to trivialize the consequences of Plaintiff's workplace injury or ongoing limitations. Nonetheless, because the ALJ's determination that he was capable of performing sedentary work as of December 31, 2005 is within the "zone of choice" accorded to the fact-finder at the administrative hearing level and should not be disturbed by this Court. *Mullen v. Bowen*, *supra*.

## VI.   CONCLUSION

I recommend that Defendant's Motion for Summary Judgment be GRANTED and that Plaintiff's Motion for Summary Judgment be DENIED.

Any objections to this Report and Recommendation must be filed within 14 days of service of a copy hereof as provided for in 28 U.S.C. §636(b)(1) and E.D. Mich. LR 72.1(d)(2). Failure to file specific objections constitutes a waiver of any further right of appeal. *Thomas v. Arn,* 474 U.S. 140, 106 S.Ct. 466, 88 L.Ed.2d 435 (1985); *Howard v. Secretary of HHS,* 932 F.2d 505 (6th Cir. 1991); *United States v. Walters,* 638 F.2d 947 (6th Cir. 1981). Filing of objections which raise some issues but fail to raise others with specificity will not preserve all the objections a party might have to this Report and Recommendation. *Willis v. Secretary of HHS,* 931 F.2d 390, 401 (6th Cir. 1991); *Smith v. Detroit Fed'n of Teachers Local 231,* 829 F.2d 1370, 1373 (6th Cir. 1987). Pursuant to E.D. Mich. LR 72.1(d)(2), a copy of any objections is to be served upon this Magistrate Judge.

Within 14 days of service of any objecting party's timely filed objections, the opposing party may file a response. The response shall be not more than 20 pages in length unless by motion and order such page limit is extended by the court. The response shall address specifically, and in the same order raised, each issue contained within the objections.

Dated: August 15, 2013          s/R. Steven Whalen
                                R. STEVEN WHALEN
                                UNITED STATES MAGISTRATE JUDGE

I hereby certify that a copy of the foregoing document was sent to parties pf record on August 15, 2013, electronically and/or U.S. Mail.

                                        s/Michael Williams
                                        Case Manager for the
                                        Honorable R. Steven Whalen